IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CONSTELLATION TECHNOLOGIES LLC, <br><br> *Plaintiff* <br><br> vs. <br><br> TIME WARNER CABLE INC. and <br> TIME WARNER CABLE ENTERPRISES <br> LLC, <br><br> *Defendants* | Civil Action No. 2:13-CV-1079 <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiff Constellation Technologies LLC ("Constellation"), by and through its undersigned attorneys, hereby pleads the following claims for patent infringement against Defendants Time Warner Cable Inc. and Time Warner Cable Enterprises LLC (collectively, "TWC") and alleges as follows.

### PARTIES

1.      Plaintiff Constellation is a Delaware limited liability company with its principal place of business located at Legacy Town Center 1, 7160 North Dallas Parkway, Suite No. 250, Plano, TX 75024.

2.      Constellation is a wholly-owned subsidiary of Rockstar Consortium US LP ("Rockstar"), which has been actively conducting business and operations at Constellation's current location in Plano since at least 2012.

3.      Constellation is the assignee and owns all right, title, and interest to U.S. Patent Nos. 6,128,649 (the "'649 Patent"), 6,845,389 (the "'389 Patent"), 6,901,048 (the "'048 Patent"), 7,154,879 (the "'879 Patent"), 8,134,917 (the "'917 Patent") and 8,464,299 (the "'299 Patent")

(collectively, the "Patents-in-Suit").

4.      The Patents-in-Suit (or applications leading to the Patents-in-Suit) were acquired from Nortel Networks Limited, a wholly-owned subsidiary of Nortel Networks Corporation (together with its affiliates, "Nortel").  Beginning in 1991, Nortel maintained an 800,000-square-foot headquarters that housed thousands of employees on Lakeside Boulevard, off North Central Expressway in Richardson, Texas.  Rockstar moved from the Richardson, Texas Nortel building to its Plano, Texas location in 2012.

5.      On information and belief, Time Warner Cable Inc. is a Delaware Corporation with a principal place of business at 60 Columbus Circle, New York, New York 10023.

6.      On information and belief, Time Warner Cable Enterprises LLC is a Delaware Limited Liability Corporation with a principal place of business at 60 Columbus Circle, New York, New York 10023.

7.      On information and belief, TWC operates, sells and offers to sell video, high-speed data and voice services over its broadband cable systems throughout the United States, including in the State of Texas and within this district.

8.      On information and belief, in addition to video, high-speed data and voice services, TWC also operates, sells and offers to sell video, networking and transport services and managed and outsourced information technology solutions and cloud services throughout the United States, including in the State of Texas.

## FACTUAL BACKGROUND

9.      Nortel was a multinational telecommunications and data networking equipment manufacturer headquartered in Ontario, Canada.  It was founded in Montreal, Quebec in 1895. At its peak, Nortel employed over 94,500 workers worldwide.

10.      Nortel was the source of many of the most important innovations in history in the field of telecommunications and networking.  Between 1992 and 2009, Nortel spent over 34 billion dollars on research and development conducted at centers across North America.

11.     In 2011, a group of some of the most respected high technology companies in the world, including Apple, Microsoft, Ericsson, Sony, and Blackberry, stepped in to preserve as much of Nortel's exceptional patent portfolio as possible.  This group created a consortium that would serve as the steward of the portfolio.

12.     The acquisition of Nortel's patent portfolio by the consortium was subject to review by United States Department of Justice's Antitrust Division.  The review period expired on March 12, 2012.

13.     Shortly after the expiration of the review period imposed by the United States Department of Justice, Rockstar invited TWC to negotiate a license to patents in the portfolio. TWC insisted on a non-disclosure agreement, but then refused to sign one even after Rockstar agreed to terms.

14.     TWC has not taken any active steps to negotiate a license with Rockstar or Constellation.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and §§ 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

16.     Venue is proper in this federal district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

17.     This Court has personal jurisdiction over TWC.  TWC conducts business in the State of Texas and in this district.  In particular, as detailed in Paragraphs 5 through 8, TWC has regularly and deliberately engaged in, and continues to engage in, activities that result in the use, sale, and offers for sale of infringing services and processes in the State of Texas and in this judicial district.

## FIRST CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 6,128,649)

18.     Constellation re-alleges and incorporates by reference Paragraphs 1 through 17 as

if fully set forth herein.

19.     The '649 Patent, entitled "Dynamic Selection of Media Streams for Display" was duly and legally issued on October 3, 2000.   A true and correct copy of the '649 Patent is attached as Exhibit A.

20.     The '649 Patent names Keith M. Smith and Russell W. Pretty as co-inventors.

21.     The '649 Patent has been in full force and effect since its issuance.  Constellation owns by assignment the entire right, title and interest in and to the '649 Patent, including the right to seek damages for past, current and future infringement thereof.

22.     The '649 Patent states that it "relates to methods and apparatus for selecting for display one or more from a number of real-time media streams and to corresponding software, network nodes and terminals."  Ex. A at 1:6-9.

23.     The patent references "[a] method of selecting for display one or more streams from a number of real-time media streams available to be transmitted across a communications network for display on respective terminals of a first, and at least one other user, the method comprising the steps of: determining a policy of the first user for making the selection, the policy comprising an indication of how the selection should be made, the policy being selectable by the first user; determining a condition of at least one of the communications network and the terminal; determining dynamically which streams to select for the first user according to the condition and according to the first user's policy; and, causing only the selected streams to be passed for display on the terminal of the first user, independently of selections made for passing to the other users." *Id.* at 27:59-28:8.

24.     On information and belief, TWC advertises and promotes that it has deployed a technology known as switched digital video ("SDV") in all of its service areas to conserve bandwidth and to accommodate increasing demands for greater capacity in its network.

25.     Constellation is informed and believes, and thereon alleges, that TWC has infringed and will continue to infringe one or more claims of the '649 Patent, in violation of 35 U.S.C. § 271, by, among other things, operating, selling and offering to sell within the United

States, without authority or license from Constellation, services, including services that utilize SDV technologies, that fall within the scope of one or more claims of the '649 Patent.

26.     As a result of TWC's infringement of the '649 Patent, Constellation has been damaged.  Constellation is entitled to recover for damages sustained as a result of TWC's wrongful acts in an amount subject to proof at trial.

27.     In addition, TWC's infringing acts and practices have caused and are causing immediate and irreparable harm to Constellation.

28.     Constellation is informed and believes, and thereon alleges, that this is an exceptional case, which warrants an award of attorney's fees to Constellation pursuant to 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 6,845,389)

29.     Constellation re-alleges and incorporates by reference Paragraphs 1 through 17 as if fully set forth herein.

30.     The '389 Patent, entitled "System and Method for Broadband Multi-User Communications Sessions" was duly and legally issued on January 18, 2005.  A true and correct copy of the '389 Patent is attached as Exhibit B.

31.     The '389 Patent names Sanjoy Sen, Venson Shaw, Hrishikesh Gossalin and Thinh Nguyen as co-inventors.

32.     The '389 Patent has been in full force and effect since its issuance.  Constellation owns by assignment the entire right, title and interest in and to the '389 Patent, including the right to seek damages for past, current and future infringement thereof.

33.     The '389 Patent "relates to telecommunications equipment and networks, and more particularly, to a system and method for broadband multi-user communication sessions. . . ." Ex. B at 1:16-19.

34.     The patent references "[a] method of setting up a multi-user communication

session over a global computer network, comprising: sending a session participation request message from a first user to a second user, the session participation request message including the first user's QoS requirements for the session; receiving a negotiating message from the second user by the first user in response to the session participation request message, the negotiation message including the second user's QoS requirements for the session responsive to the first user's QoS requirements; determining resource availability in access networks of the first and second users according to the second user's QoS requirements; reserving resources in the respective access networks of the first and second users in response to resources being available to achieve the second user's QoS requirements; and sending an acknowledgement message from the first user to the second user in response to receiving the negotiating message to indicate the completion of QoS provisioning." *Id.* at 8:64-9:19.

35.    On information and belief, TWC operates an integrated IP Multimedia Subsystem ("IMS") network to provide its voice, video and data services.

36.    Constellation is informed and believes, and thereon alleges, that TWC has infringed and will continue to infringe one or more claims of the '389 Patent, in violation of 35 U.S.C. § 271, by, among other things, operating, selling and offering to sell within the United States, without authority or license from Constellation, services, including IMS services, that fall within the scope of one or more claims of the '389 Patent.

37.    As a result of TWC's infringement of the '389 Patent, Constellation has been damaged.   Constellation is entitled to recover for damages sustained as a result of TWC's wrongful acts in an amount subject to proof at trial.

38.    In addition, TWC's infringing acts and practices have caused and are causing immediate and irreparable harm to Constellation.

39.    Constellation is informed and believes, and thereon alleges, that this is an exceptional case which warrants an award of attorney's fees to Constellation pursuant to 35 U.S.C. § 285.

### THIRD CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 6,901,048)

40.    Constellation re-alleges and incorporates by reference Paragraphs 1 through 17 as if fully set forth herein.

41.    The '048 Patent, entitled "Link-Level Protection of Traffic in a Packet-Switched Network" was duly and legally issued on May 31, 2005.  A true and correct copy of the '048 patent is attached as Exhibit C.

42.    The '048 Patent names Guo Qiang Q. Wang, Kent E. Felske, Wengfeng Chen, Chenjiang Hu and Liangyu L. Jia as co-inventors.

43.    The '048 Patent has been in full force and effect since its issuance.  Constellation owns by assignment the entire right, title and interest in and to the '048 Patent, including the right to seek damages for past, current and future infringement thereof.

44.    The '048 Patent "relates to computer networks, and more specifically to a computer network that provides automatic protection switching to re-route data packets in the event of a network link failure."  Ex. C at 1:15-18.

45.    The '048 Patent references the "need of a protection switching mechanism that is sufficiently fast to prevent the loss of high-priority traffic ordinarily travelling through one or more failed links, without unpredictably overloading the remaining operational links during a protection mode."  *Id.* at 2:47-51.

46.    The patent discusses "[a] method of switching traffic in a packet-switched network having a plurality of nodes interconnected by links, the method comprising the steps of: upon detection of a failure of a link connected a pair of adjacent nodes, encapsulating packets within the bodies of tunnel packets and forwarding the tunnel packets along a predefined protection path which bypasses the failed link, including upon receipt of a tunnel packet by one of the adjacent nodes along a protection path, the recipient node retrieving the encapsulated packet and routing it as a function of a destination specified in the header of the encapsulated

- 7 -

packet." *Id.* at 18:39-50.

47.    On information and belief, TWC operates MPLS networks and deploys, among other things, MPLS fast reroute techniques.

48.    Constellation is informed and believes, and thereon alleges, that TWC has infringed and will continue to infringe one or more claims of the '048 Patent, in violation of 35 U.S.C. § 271, by, among other things, operating, selling and offering to sell within the United States, without authority or license from Constellation, services, including MPLS services, that fall within the scope of one or more claims of the '048 Patent.

49.    As a result of TWC's infringement of the '048 Patent, Constellation has been damaged.  Constellation is entitled to recover for damages sustained as a result of TWC's wrongful acts in an amount subject to proof at trial.

50.    In addition, TWC's infringing acts and practices have caused and are causing immediate and irreparable harm to Constellation.

51.    Constellation is informed and believes, and thereon alleges, that this case is an exceptional case which warrants an award of attorney's fees to Constellation pursuant to 35 U.S.C. § 285.

## FOURTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 7,154,879)

52.    Constellation re-alleges and incorporates by reference Paragraphs 1 through 17 as if fully set forth herein.

53.    The '879 Patent, entitled "Point to Multipoint Network" was duly and legally issued on December 26, 2006.  A true and correct copy of the '879 Patent is attached as Exhibit D.

54.    The '879 Patent names Robert Pfeffer, David Mann and Brian Unitt as co-inventors.

55.    The '879 Patent has been in full force and effect since its issuance.  Constellation

owns by assignment the entire right, title and interest in and to the '879 Patent, including the right to seek damages for past, current and future infringement thereof.

56.     The '879 Patent "relates to a method and apparatus for providing a high capacity point-to-multipoint network, a system incorporating the same, and signals generated by such a system." Ex. D at 1:13-16.  The patent is further "particularly related to, but in no way limited to, point-to-multipoint networks, known as fibre to the user (FTTU)." *Id.* at 1:16-18.

57.     The '879 Patent "seeks to provide an improved method and apparatus for providing high capacity point-to-multipoint communications network, especially in access networks." *Id.* at 2:14-16.

58.     The patent references "[a] point-to-multipoint network arrangement comprising: a head-end station; at least one subscriber station; a point-to-multipoint network providing shared medium connectivity between each subscriber station and the head-end station; wherein each subscriber station is arranged to transmit data that has previously been segmented into packet-switched transport protocol packets, to the head-end station, using a time division multiple access protocol, the head-end station being arranged to allocate a number of consecutive time slots to each subscriber station, each subscriber station having framing apparatus arranged to frame a packet of at least 576 bytes directly without segmentation of the packet, and synchronisation apparatus arranged to send the frame to the head-end station during an allocation consecutive time slots and with a guard band determined without using ranging." *Id.* at 6:21-39.

59.     On information and belief, TWC deploys Ethernet passive optical networks.

60.     Constellation is informed and believes, and thereon alleges, that TWC has infringed and will continue to infringe one or more claims of the '879 Patent, in violation of 35 U.S.C. § 271, by, among other things, operating, selling and offering to sell within the United States, without authority or license from Constellation, services, including point-to-multipoint network services (including Ethernet passive optical network services and whole house entertainment network services) that fall within the scope of one or more claims of the '879 Patent.

61.     As a result of TWC's infringement of the '879 Patent, Constellation has been damaged.  Constellation is entitled to recover for damages sustained as a result of TWC's wrongful acts in an amount subject to proof at trial.

62.     In addition, TWC's infringing acts and practices have caused and are causing immediate and irreparable harm to Constellation.

63.     Constellation is informed and believes, and thereon alleges, that this case is an exceptional case, which warrants an award of attorney's fees to Constellation pursuant to 35 U.S.C. § 285.

## FIFTH CLAIM FOR RELIEF

## (Infringement of U.S. Patent No. 8,134,917)

64.     Constellation re-alleges and incorporates by reference Paragraphs 1 through 17 as if fully set forth herein.

65.     The '917 Patent, entitled "Automatic Protection Switching Using Link-Level Redundancy Supporting Multi-Protocol Label Switching" was duly and legally issued on March 13, 2012.  A true and correct copy of the '917 patent is attached as Exhibit E.

66.     The '917 Patent names Andre N. Fredette, Loa Andersson, Naganand Doraswamy, and Anoop Ghanwani as co-inventors.

67.     The '917 Patent has been in full force and effect since its issuance.  Constellation owns by assignment the entire right, title and interest in and to the '917 Patent, including the right to seek damages for past, current and future infringement thereof.

68.     The '917 Patent "relates to computer networks, and more specifically to a computer network that provides protection switching to reroute data packets in the event of a network link failure." Ex. E at 1:13-16.

69.     The patent describes use of "a label switching protocol to establish backup paths with explicit routing for use in the event of a link failure in a computer network." *Id.* at 3:37-40.

70.     The patent references "[a] method comprising: providing protection switching in

the event of a link failure associated with an intermediate routing node that delivers explicitly routed data packets from a source to a destination in a computer network, including identifying, for at least one link of the routing node, a backup routing path that is used by the routing node for forwarding affected data packets to the destination in the event of a failure of the at least one link, wherein the backup routing path is identified prior to the failure of the at least one link." *Id.* at 7:5-16.

71.     On information and belief, TWC operates MPLS networks and deploys, among other things, MPLS fast reroute techniques.

72.     Constellation is informed and believes, and thereon alleges, that TWC has infringed and will continue to infringe one or more of the '917 Patent, in violation of 35 U.S.C. § 271(a), by, among other things, operating, selling and offering to sell within the United States, without authority or license from Constellation, services, including MPLS services, that fall within the scope of one or more claims of the '917 Patent.

73.     As a result of TWC's infringement of the '917 Patent, Constellation has been damaged.  Constellation is entitled to recover for damages sustained as a result of TWC's wrongful acts in an amount subject to proof at trial.

74.     In addition, TWC's infringing acts and practices have caused and are causing immediate and irreparable harm to Constellation.

75.     Constellation is informed and believes, and thereon alleges, that this case is an exceptional case, which warrants an award of attorney's fees to Constellation pursuant to 35 U.S.C. § 285.

## SIXTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,464,299)

76.     Constellation re-alleges and incorporates by reference Paragraphs 1 through 17 as if fully set forth herein.

77.     The '299 Patent, entitled "Resource Conservation for Packet Television Services"

was duly and legally issued on June 11, 2013.  A true and correct copy of the '299 Patent is attached as Exhibit F.

78.     The '299 Patent names Rolf G. Meier and Tim J. Rahrer as co-inventors.

79.     The '299 Patent has been in full force and effect since its issuance.  Constellation owns by assignment the entire right, title and interest in and to the '299 Patent, including the right to seek damages for past, current and future infringement thereof.

80.     The '299 Patent "relates to delivery of television content, and in particular to controlling delivery of television content to conserve network resources based on whether the television content is being viewed."  Ex. F at 1:12-15.

81.     The patent discusses the "need to conserve the network resources required to provide packet-based television services" given the growing subscriber demand for "high quality television content" and the higher "bandwidth required to support high-definition television content." *Id.* at 1:30-39.

82.     The patent further discusses that "[a] significant waste of network resources occurs when television content is delivered to a television monitor that is not being viewed" and that there is correspondingly "a need for a technique to control delivery of the television content to conserve network resources when the television content is not being viewed." *Id.* at 1:40-42, 1:55-57.

83.     The patent also discusses "[a] method for conserving resources associated with packet television services comprising: receiving television content from a content provider over a packet network; providing the television content to a television monitor for display to a viewer; determining if a resource conserving process should be activated, wherein the resource conserving process determines if an action to conserve resources associated with transporting the television content over the packet network should be performed; if the resource conserving process should be activated: determining whether the viewer is watching the television monitor; and initiating the action to conserve resources associated with transporting the television content over the packet network upon determining that the viewer is not watching the television monitor;

if the resource conserving process should not be activated: continue providing the television." *Id.* at 8:11-30.

84.     On information and belief, TWC advertises and promotes the fact that it has deployed a technology known as switched digital video ("SDV") in all of its service areas to conserve bandwidth and to accommodate increasing demands for greater capacity in its network.

85.     Constellation is informed and believes, and thereon alleges, that TWC has infringed and will continue to infringe, one or more claims of the '299 Patent, in violation of 35 U.S.C. § 271, by, among other things, operating, selling and offering to sell within the United States, without authority or license from Constellation, services, including services that utilize the switched digital video technologies, that fall within the scope of one or more claims of the '299 Patent.

86.     As a result of TWC's infringement of the '299 Patent, Constellation has been damaged.  Constellation is entitled to recover for damages sustained as a result of TWC's wrongful acts in an amount subject to proof at trial.

87.     In addition, TWC's infringing acts and practices have caused and are causing immediate and irreparable harm to Constellation.

88.     Constellation is informed and believes, and thereon alleges, that this case is an exceptional case, which warrants an award of attorney's fees to Constellation pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Constellation prays for judgment against TWC as follows:

A.  That TWC has infringed, and continues to infringe, each of the Patents-in-Suit;

B.  That TWC pay Constellation damages adequate to compensate Constellation for TWC's infringement of the Patents-in-Suit, together with interest and costs under 35 U.S.C. § 284;

C.  That TWC be ordered to pay pre-judgment and post-judgment interest on the damages assessed;

    D.   That TWC be ordered to pay supplemental damages to Constellation, including interest, with an accounting, as needed;

    E.   That this is an exceptional case under 35 U.S.C. § 285, that TWC pay Constellation's attorney's fees and costs in this action; and

    F.   That Constellation be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Constellation hereby demands a trial by jury on all issues triable to a jury.

Dated:  December 11, 2013.

Respectfully submitted,

*/s/ Harry L. Gillam Jr.*
Harry L. Gillam, Jr.
State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
gil@gillamsmithlaw.com

OF COUNSEL:

Jason G. Sheasby
State Bar No. 205455 (California)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067-4276
T – 310-203-7937
F – 310-203-7199
Email: jsheasby@irell.com

Benjamin W. Hattenbach
State Bar No. 186455 (California)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067-4276

2921342

T – 310-203-7937
F – 310-203-7199
Email: bhattenbach@irell.com

Ellisen Shelton Turner
State Bar No. 224842 (California)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067-4276
T – 310-203-7937
F – 310-203-7199
Email: eturner@irell.com

Hong (Annita) Zhong
State Bar No. 266924 (California)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067-4276
T – 310-203-7937
F – 310-203-7199
Email: hzhong@irell.com

Zachary T. Elsea
State Bar No. 279252 (California)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067-4276
T – 310-203-7937
F – 310-203-7199
Email: zelsea@irell.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service, on this the 11th day of December, 2013.


                                        */s/ Harry L. Gillam, Jr.*
                                        Harry L. Gillam, Jr.