IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CONSTELLATION TECHNOLOGIES LLC, | § § § | |
| Plaintiff | § § | CIVIL NO. 2:13-CV-1079 |
| V. | § § | |
| TIME WARNER CABLE INC. and TIME WARNER CABLE ENTERPRISES LLC, | § § § § | |
| Defendants | § § | |
| CONSTELLATION TECHNOLOGIES LLC, | § § § | |
| Plaintiff | § § | CIVIL NO. 2:13-CV-1080 |
| V. | § § § | |
| WINDSTREAM HOLDINGS, INC., WINDSTREAM CORPORATION, and WINDSTREAM COMMUNICATIONS, INC., | § § § § § § | CONSOLIDATED FOR PRETRIAL PURPOSES |
| Defendants | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Time Warner Cable Inc. and Time Warner Cable Enterprises LLC's (collectively "TWC") Motion to Transfer to the District of Delaware (Dkt. 23, the "Motion"), filed February 11, 2014.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Constellation Technologies LLC ("Constellation") filed this suit against TWC on December 11, 2013. At the beginning of 2014, TWC's lead counsel filed a series of

1

declaratory judgment actions in the District of Delaware on behalf of a number of cable-industry companies. The plaintiffs in those later-filed Delaware actions explicitly cited this case as a basis for requesting declaratory judgment. (Dkt. 39-38 at 12-13.)

In addition to moving to transfer here, TWC also moved the United States Panel on Multidistrict Litigation centralization and transfer under 28 U.S.C. § 1407, which permits transfer "for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." The Panel, after reviewing TWC's briefing and conducting a hearing on the matter, issued its order on August 12, 2014, and stated "we are not persuaded that [centralization and transfer] would serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation." *In re: Constellation Technologies LLC Patent Litigation*, No. 2558, Dkt. 64 at 2 (J.P.M.L. August 12, 2014). Accordingly, it denied Defendants' request. *Id*.

## II. LEGAL STANDARDS

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d

1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

### III. ANALYSIS

#### A. Availability of the Transferee Venue

TWC contends that this case could have been brought in the District of Delaware, and Constellation does not appear to dispute that contention.

3

B. Private Interest Factors

   1. *Relative Ease of Access to Sources of Proof*

TWC contends that the bulk of its technical documentation for three accused technologies is located in Herndon, Virginia (roughly 900 miles closer to the District of Delaware than the Eastern District of Texas)[1], and the bulk of its technical documentation for two others is located in Colorado (roughly 900 miles closer to the Eastern District of Texas than the District of Delaware). (Dkt. 23-1.) Constellation contends that because none of TWC's documents are actually in the District of Delaware itself, the Court must disregard the location of those documents entirely, citing *In re Genentench*, 566 F.3d. 1338, 1345 (Fed. Cir. 2009). The Court disagrees with Constellation on this point. While it is notable that TWC does not have any presence or documents actually within the District of Delaware, the Court does not read *In re Genentech* as requiring the analysis to end there as a matter of law. But in any event, on the record before the Court it is not clear that – even for TWC's own technical documents – the District of Delaware offers substantially more ease of access to sources of proof than the Eastern District of Texas. Constellation contends that "Texas is home to one of five major regional networks provisioned by TWC" and that there is substantial physical infrastructure in and near this district that could serve as a source of proof as to TWC's alleged infringement. (Dkt. 39 at 18.) TWC does not appear to dispute this fact.

Constellation contends that it possesses relevant documents at its headquarters in the Eastern District of Texas, including technical documents, licensing information, royalty payments, and patent files. TWC argues that "Constellation was not registered to conduct

---

[1] TWC also contends in its Motion that it possesses corporate and marketing documents in New York City, but it is not clear from the record why those documents have any likelihood of being relevant here.

business in Texas until nine days before filing suit" and questions whether it actually has a substantial number of relevant documents given its existence as a patent licensing entity, a position that appears to be incomplete at best. (Mot. at 11.) Constellation is a derivative of an entity who acquired the portfolio of Nortel, a company that practiced the technology at issue here extensively, on a national scale, and based its U.S. operations in an eight hundred thousand square foot facility (constructed more than twenty years ago) less than a mile from the Eastern District border. TWC's contentions, both with regard to this prong and others, that Constellation's connections to this region are ephemeral or recent appears to have no basis anywhere in the factual record except the fact that the actual Constellation corporate entity was newly established period (not just in this area). The Court observes that Constellation appears to possess relevant documents within and near this district, and that because of the extensive history of the technology and companies in question here, the content and volume of those documents appears to be more substantial than those possessed by an average plaintiff in a patent case.

TWC also mentions in passing that some non-party witnesses may possess relevant documents. Even if the Court were to accept the LinkedIn profiles presented by TWC as proper evidence,[2] it does not appear that TWC has had any contact with any of these parties, nor does TWC state why it believes that any of these parties might possess documents relevant to this case not already possessed by the parties.

Some of TWC's relevant documents appear to be substantially closer to the District of Delaware than the Eastern District of Texas, and some appear to be substantially closer to the Eastern District of Texas than the District of Delaware. All of Constellation's relevant

---

[2] The Court addresses the profiles provided by TWC for the sake of completeness, despite the fact that there does not appear to be a proper evidentiary basis upon which to rely on them.

documents appear to be located either in or immediately adjacent to the Eastern District of Texas. It appears likely that at least some of the allegedly infringing physical infrastructure is present in and around the Eastern District of Texas, and may serve as a physical source of proof in this case. Accordingly, TWC has failed to show that this factor favors transfer, and the Court finds that it disfavors transfer.

*2. Availability of Compulsory Process*

TWC argues that ARRIS, a third-party to this suit, maintains a "key facility for cable television and hardware" in Horsham, Pennsylvania, and that Delaware is thus the only district with compulsory subpoena power because "no third-party witnesses are believed to reside within 100 miles of this Court." (Mot. at 14.) First, there is no evidence that any relevant witnesses are located at the Pennsylvania ARRIS facility, and TWC notably stops short of contending as much.[3] Further, there is no evidence that ARRIS employees would be unwilling, given ARRIS's active involvement with TWC in related litigations.

The Court is also troubled by the glaring omission presented in TWC's last statement: "no third party witnesses are believed to reside within 100 miles of this Court." (*Id.*) It is clear from other filings and hearings held in this case that ARRIS is not the only equipment manufacturer that provides products to TWC. Cisco, for example, also provides equipment to TWC, and has a substantial presence in this region including two sizeable facilities adjacent to the Eastern District of Texas and over 1,200 employees within the Court's absolute subpoena power. It is difficult for the Court to believe that TWC simply forgot to mention Cisco, given its

---

[3] Constellation contends that TWC included this ARRIS facility merely as a red herring, given the fact that it was recently acquired and does not appear to have manufactured any of the devices relevant to this case. TWC fails to substantively address this contention.

heavy involvement with Cisco in this and related litigations and heavy reliance on the Delaware Cisco case even in other portions of its Motion. If TWC has, in fact, done an investigation of the nearby Cisco facilities and determined that the employees located there are not relevant to the litigation, it suggests that they have either failed to do such an investigation with regard to ARRIS, or performed it and not disclosed the results. Even when confronted with their omission, TWC merely states that Constellation hasn't shown that the Cisco facilities (and, it follows, employees) are relevant here. This merely serves to highlight TWC's own failure to meet the burden it must carry as the movant, given that TWC has similarly failed to provide such evidence with regard to ARRIS.

It is not clear from the record that either the Eastern District of Texas or the District of Delaware has absolute subpoena power over any substantial number of relevant and unwilling witnesses in this case. Accordingly, TWC has failed to show that this factor favors transfer.

*3. Cost of Attendance for Willing Witnesses*

TWC relies primarily on non-party witnesses with regard to the cost of attendance factor. TWC contends "TWC's primary equipment vendors have already committed to making their relevant witnesses and documents available in Delaware through the filing of the aforementioned actions." (Mot. at 12.) In doing so, however, TWC entirely short-circuits the required analysis. The question with regard to cost of attendance is not whether the witnesses in question are willing (or are required) to attend trial, but targeted instead at the convenience and cost of such attendance. TWC mentions only ARRIS as a primary equipment vendor, and contends only that they have a facility near Delaware. As already discussed above, TWC does not identify a single potential witness at the newly-acquired ARRIS facility, or even allege that the ARRIS

7

employees at that location *are* in fact relevant.[4] Thus, it's unclear what relevance – if any – the employees at the Pennsylvania ARRIS facility have to the case as opposed to the employees at the plethora of other unidentified ARRIS facilities. TWC also turns to inventors and prosecuting attorneys.[5] It appears that some of these parties may live closer to the District of Delaware than the Eastern District of Texas, and some others may live closer to the Eastern District of Texas than the District of Delaware. TWC does not state which of these witnesses might possess knowledge making them material witnesses in this suit. Similarly, Constellation identifies a number of third-parties residing in and near the Eastern District of Texas, but does not clearly state why those third-parties possess knowledge likely to make them material witnesses here.

As for its party witnesses, TWC also does not identify any particular witnesses, but instead provides only a general statement that its "engineers" are located in primarily two locations: Herndon, Virginia (roughly 900 miles closer to the District of Delaware than the Eastern District of Texas) for three of five accused technologies, and Colorado (roughly 900 miles closer to the Eastern District of Texas than the District of Delaware) for the other two. (Mot. at 13.) Constellation contends that the Eastern District of Texas is more convenient to their witnesses than the District of Delaware, and it appears that at least one of those witnesses is likely to be called at trial. (Dkt. 39 at 13.) TWC challenges Constellation's assertion, but does not take the position that Delaware is more convenient for Constellation's party witnesses. (Dkt. 51 at 4-5.)

TWC has failed to show that this factor favors transfer.

---

[4] The Court also echoes its previous concerns that TWC entirely ignores an equally – if not more – important equipment vendor in Cisco given its substantial presence in this region. *See* section B.2, *supra*.

[5] TWC again relies solely on information that does not appear to have a proper evidentiary basis, but the Court addresses those arguments notwithstanding that deficiency. *See* section B.1, FN2, *supra*.

*4. Other Practical Problems*

The factor most relied-upon by TWC is judicial economy. TWC contends that declaratory judgment actions were filed by Cisco and ARRIS in Delaware "to resolve the infringement and validity issues once and for all," and that transfer is appropriate on the theory that it is more efficient to handle those cases together. (Mot. at 3.) But those declaratory judgment claims were filed after the filing date of this suit. TWC's proposal would require that this Court defy the well-settled proposition that "[m]otions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). When the instant suit was instituted, the only case pending in the District of Delaware had no overlap in defendants, no overlap in asserted patents, no overlap in accused technologies – the only commonality was that the plaintiff in the Delaware case was an entity related to Constellation. This is clearly not a basis for judicial economy.[6] The Court does, however, find that judicial economy is served by handling the copending Windstream case – which was filed concurrently with the instant case and is currently consolidated with it for pretrial purposes – together with the instant case.[7]

The Court finds that this factor weighs against transfer.

C. <u>Public Interest Factors</u>

*1. Local Interest*

TWC argues that Delaware has a local interest in the case because it is the state of incorporation for TWC and Constellation. However, the state of incorporation is not a

---

[6] If it were, there are a number of other currently pending cases in this district that were filed by entities that appear to be related to Constellation.

[7] Windstream has also filed a Motion to Transfer in its case, based on weaker facts than those presented here, that is addressed in a separate order.

connection to "the events that gave rise to this suit," as suggested by *In re Volkswagen II*. 545 F.3d at 318. Here, much of the underlying technology in this case was developed in and around the Eastern District of Texas by Nortel, and TWC's major physical network in this region has allegedly infringed on Constellation's patent. The Court finds that TWC has failed to show that this factor favors transfer.

   *2. Other Public Interest Factors*

The Court finds that the other public interest factors are neutral.

**IV.    CONCLUSION**

The Court finds that TWC has failed to meet its burden in showing that the District of Delaware is a clearly more convenient venue for this case. Thus, the Court hereby **DENIES** TWC's Motion to Transfer to the District of Delaware (Dkt. 23).

**SIGNED this 22nd day of September, 2014.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE